UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MIDWEST ATHLETICS AND SPORTS
ALLIANCE LLC,

                  Plaintiff,                  **DECISION AND ORDER**

          v.                       6:19-CV-06036 EAW

XEROX CORP.,

                  Defendant.
_____

## <u>INTRODUCTION</u>

Plaintiff Midwest Athletics and Sports Alliance LLC ("Plaintiff") alleges that Defendant Xerox Corp. ("Defendant") has infringed 20 patents related to printer technology, including United States Patent Number 7,502,582, United States Patent Number 7,720,425, and United States Patent Number 8,005,415 (collectively the "Pentachrome Patents"). (*See* Dkt. 40). Defendant asserts numerous affirmative defenses and a counterclaim for a declaratory judgment of unenforceability as to the Pentachrome Patents. (Dkt. 117). Currently pending before the Court are Plaintiff's motion to dismiss Defendant's counterclaim and fifth, sixth, and seventh affirmative defenses (Dkt. 120) and Defendant's motion to amend its Answer to the Amended Complaint to add an affirmative

defense (Dkt. 122).[1]  For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion to dismiss and to strike and grants Defendant's motion to amend.

## **BACKGROUND**

As noted above, Plaintiff has asserted against Defendant claims of infringement related to 20 patents, including the Pentachrome Patents.  (*See* Dkt. 40).  Plaintiff is not the original owner of the patents in suit, having acquired them from Eastman Kodak Co. ("Kodak") shortly before this action was commenced.  (Dkt. 122-1 at 5).  The Pentachrome Patents are subject to a terminal disclaimer[2] with United States Patent Numbers 7,236,734 and 7,340,208 (collectively the "Terminal Disclaimer Patents").  (Dkt. 117 at 13).  Kodak "overcame double patenting rejections [as to the Pentachrome Patents] by terminally

---

[1]    A special master has been appointed in this case (Dkt. 106; Dkt. 108), and Plaintiff has filed objections to the special master's recommendation regarding case narrowing (Dkt. 157), which Defendant has opposed (Dkt. 161).  The Court will resolve Plaintiff's objections by separate decision in due course.

[2]    "A 'terminal disclaimer' refers to a procedure by which patent applicants obviate and thereby cure an obviousness-type double patenting rejection by disclaiming any rights in the second application after the expiration date of the original patent.  Because the second patent will now expire at the same time as the first one, the concerns that underlie an obviousness-type double patenting rejection are alleviated and the second patent can issue, giving applicants the benefits of having their improvements protected." *Affymetrix, Inc. v. PE Corp.*, No. 01 CIV. 0634 (NRB), 2002 WL 31875401, at *2 n.4 (S.D.N.Y. Dec. 24, 2002) (citation omitted); *see also Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1213 (Fed. Cir. 2014) (explaining that "35 U.S.C. § 253's terminal disclaimer provision provide[s] patent owners a remedy against a double patenting charge by permitting the patentee to cut back the term of a later issued patent so as to expire at the same time as the earlier issued patent" (quotation and original alteration omitted)).  "[A] terminal disclaimer filed to overcome an obviousness-type double patenting rejection is effective only where the application and conflicting patent are commonly owned." *In re Hubbell*, 709 F.3d 1140, 1148 (Fed. Cir. 2013).

disclaiming them to the Terminal Disclaimer Patents." *Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, No. CV 19-514, 2019 WL 3387061, at *1 (E.D. Pa. July 25, 2019) (the "*Ricoh* Action"). "On December 9, 2016, Kodak assigned the Terminal Disclaimer Patents to Commercial Copy Innovations, Inc. (CCI). On June 29, 2017, Kodak assigned the Pentachrome Patents to [Plaintiff]." *Id*. On April 18, 2019, Plaintiff and CCI entered into an agreement whereby CCI assigned its interest in the Terminal Disclaimer Patents to Plaintiff. *Id*.

Plaintiff has taken the position, both in this action and in the *Ricoh* Action, that it owned the Terminal Disclaimer Patents prior to its agreement with CCI in April 2019, and that its agreement with CCI merely "confirmed" its ownership. *Id*. at *3; (*see also* Dkt. 120-1 at 7 ("[O]n April 18, 2019, MASA confirmed its ownership of the Terminal Disclaimer Patents through its agreement with [CCI.]")). However, as the *Ricoh* court explained, "[e]ven if Kodak had purported to assign [Plaintiff] the Terminal Disclaimer Patents when it assigned [Plaintiff] the Pentachrome Patents, which it did not, it could not have done so because Kodak had already assigned the Terminal Disclaimer Patents to CCI." 2019 WL 3387061, at *3. Accordingly, the agreement between Plaintiff and CCI "did not 'confirm' [Plaintiff's] ownership of the Terminal Disclaimer Patents. It transferred ownership of them to [Plaintiff]." *Id*.

On September 12, 2019, the parties stipulated to the voluntarily dismissal without prejudice from the instant action of "any and all claims relating to" the Pentachrome

- 3 -

Patents. (Dkt. 115 at 1). The parties further stipulated that Plaintiff would file a new action asserting the same claims against Defendant and that Defendant would not oppose a motion by Plaintiff to consolidate the to-be-filed action with the instant action. (*Id.*).

Plaintiff thereafter commenced a new action in this District asserting its claims related to the Pentachrome Patents. Complaint, *Midwest Athletics and Sports Alliance LLC v. Xerox Corp*, No. 6:19-cv-06665, Dkt. 1 (W.D.N.Y. Sept. 12, 2019) (the "Pentachrome Complaint"). On September 26, 2019, the Court granted Plaintiff's unopposed motion to consolidate the newly filed action in the instant matter. *Midwest Athletics and Sports Alliance LLC v. Xerox Corp*, No. 6:19-cv-06665, Dkt. 9 (W.D.N.Y. Sept. 26, 2019).

Defendant filed its Answer to the Pentachrome Complaint on October 24, 2019. (Dkt. 117). Defendant also asserted a counterclaim for a declaratory judgment of unenforceability as to the Pentachrome Patents. (*Id.*). On November 14, 2019, Plaintiff filed the pending motion to dismiss Defendant's counterclaim and strike its fifth, sixth, and seventh affirmative defenses as to the Pentachrome Complaint. (Dkt. 120).

On November 22, 2019, Defendant filed the pending motion to amend its Answer to the Amended Complaint. (Dkt. 122). In particular, Defendant seeks leave to "assert the defense of express or implied license and patent exhaustion." (*Id.* at 1).

Defendant filed its opposition to Plaintiff's motion to dismiss and to strike on December 5, 2019. (Dkt. 126). Plaintiff filed its reply on December 12, 2019. (Dkt. 131).

Plaintiff filed its opposition to Defendant's motion to amend on December 18, 2019. (Dkt. 133).  Defendant filed its reply on January 2, 2020.  (Dkt. 144).

**DISCUSSION**

I.   **Plaintiff's Motion to Dismiss and to Strike**

    A.   **Request for Dismissal of Defendant's Counterclaim**

        1.   **Legal Standard**

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 313 (S.D.N.Y. 2014) (quotation omitted).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [counterclaim], documents attached to the [counterclaim] as exhibits, and documents incorporated by reference in the [counterclaim]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [party asserting the claim]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant's] obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the . . . '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### 2.    <u>Defendant's Counterclaim Fails as a Matter of Law</u>

In its counterclaim, Defendant seeks a declaratory judgment of unenforceability as to the Pentachrome Patents, on the basis that the Pentachrome Patents became unenforceable once they no longer shared common ownership with the Terminal Disclaimer Patents.  (Dkt. 117 at 13-14).  At this stage of the proceedings, the Court must assume that Defendant's version of the facts is true—namely, that the Pentachrome Patents and the Terminal Disclaimer Patents were not commonly owned by Plaintiff until April of 2019, when CCI assigned its interest therein to Plaintiff.

"To enforce a patent subject to a terminal disclaimer filed to obviate a double patenting rejection, the plaintiff must also own the disclaimer patent.  A plaintiff who does not also own the terminal disclaimer patent lacks standing to bring an infringement claim."

*Ricoh*, 2019 WL 3387061, at *2 (citations omitted).  Prior to April 30, 1971, 37 C.F.R. § 1.321 provided that where a patent was subject to a terminal disclaimer, it would "expire immediately" if common ownership ceased to exist.  *Merck & Co. v. U.S. Int'l Trade Comm'n*, 774 F.2d 483, 486 (Fed. Cir. 1985).  However, effective April 30, 1971, the regulation was amended "to provide that [terminal] disclaimers need state only that the patent be unenforceable during the period it is not commonly owned with the other patents recited in the disclaimer."  *Id.*  In *Merck*, the Federal Circuit described the 1971 amendments to 37 C.F.R. § 1.321 as having set a "new and less severe standard."  *Id*.

Defendant argues that, notwithstanding the 1971 amendments to the regulation, there is "at least a genuine question of law as to whether the breach of the promise for common ownership of the Pentachrome Patents and Terminal Disclaimer Patents can be cured or renders these patents permanently unenforceable."  (Dkt. 126 at 14).  However, questions of law are amenable to resolution on a motion to dismiss.  *See Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 312 (E.D.N.Y. 2015).  In other words, the existence of a "genuine question of law" does not warrant denial of a motion to dismiss, because it is the province of the Court to resolve such questions.

Here, the legal question presented is whether a period of separate ownership renders a patent subject to a terminal disclaimer permanently unenforceable.  There is scant case law addressing this issue.  Plaintiff cites *LG Philips LCD Co., Ltd. v. Tatung Co. of America*, No. CV 02-6775 CBM(JTLx), Dkt. 581 (C.D. Cal. Sept. 19, 2005).  (*See* Dkt.

120-1 at 12-13).  In *LG Philips*, the defendants contended that the plaintiff lacked standing

to bring certain patent infringement claims because, at the time the action was commenced,

it did not own a patent with which the patents in suit were subject to a terminal disclaimer.

*LG Philips*, No. CV 02-6775 CBM(JTLx), Dkt. 581 at 10-12.  The *LG Philips* court agreed

that the plaintiff's claims based on such patents had to be dismissed for lack of standing,

and then considered whether the dismissal should be with or without prejudice.  *Id*. at

12-15.  The *LG Philips* court rejected the defendants' argument that "violation of the non-

alienation provision of the terminal disclaimers render[ed] the  . . . patents permanently

unenforceable," explaining that the plain language of the regulation "places no restrictions

on enforceability during a period of common ownership that follows a period of separate

ownership."  *Id*. at 13-14.  The *LG Philips* court specifically considered the argument—

which Defendant also advances in this case—that the "notion" of temporary

unenforceability was "unworkable" because it would "mean that patents could vacillate

between periods of enforceability and unenforceability based on changes in ownership, and

the public would be left to speculate about whether, on any given day, a patent was

unenforceable."  *Id*. at 14.  While acknowledging the persuasiveness of this argument as a

policy matter, the court concluded it was inconsistent with the changes made by the 1971

amendments to the regulation, and that the plain language of the regulation ultimately

governed.  *Id*.

The Court finds the reasoning in *LG Philips* persuasive.  Following the 1971 amendments, 37 C.F.R. § 1.321 does not, on its face, provide that a break in common ownership permanently renders a patent subject to a terminal disclaimer unenforceable. Instead, the plain language of the regulation indicates that such a patent is enforceable during any "period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting."   37 C.F.R. § 1.321(c)(3).  Moreover, the Federal Circuit has acknowledged that the 1971 Amendments imposed a "new and less severe standard" than the prior version of the regulation, which unambiguously provided for permanent unenforceability upon a break in common ownership.  *Merck*, 774 F.2d at 486.

Defendant relies on *In re Fallaux*, 564 F.3d 1313 (Fed. Cir. 2009), to argue that "[a]llowing a cure to the breach of the promise of common ownership in a terminal disclaimer" violates "the very policy recognized by the Courts behind the use of terminal disclaimers to overcome double patenting rejections" by allowing a patent to "vacillate between periods of unenforceability and enforceability without providing the proper notice to the public that an unenforceable patent was now enforceable."  (Dkt. 126 at 12-13). However, *In re Fallaux* was not an enforcement action and did not consider the issue presented here.  Moreover, while this Court, like the *LG Philips* court, recognizes the logic of Defendant's policy argument, policy considerations do not justify ignoring the plain

language of the regulation.  *See Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 175 (2d Cir. 1999).

For these reasons, the Court agrees with Plaintiff that Defendant's counterclaim fails as a matter of law, because it is based on the erroneous legal assertion that the period of separate ownership rendered the Pentachrome Patents permanently unenforceable.  The Court accordingly grants Plaintiff's motion to dismiss Defendant's counterclaim asserting unenforceability of the Pentachrome patents.

## B.     Request to Strike Affirmative Defenses

### 1.     Legal Standard

Federal Rule of Civil Procedure 12(f) provides that the Court may strike "from a pleading" any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The Second Circuit recently clarified the standards for deciding a motion to strike an affirmative defense, explaining that an affirmative defense should be stricken if (1) it is not plausibly pled or (2) "it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims."  *GEOMC Co. v. Calmare Therapeutics Inc*., 918 F.3d 92, 97-98 (2d Cir. 2019).[3]  The Court must further consider whether the inclusion of

---

[3]     "The Federal Circuit defers to the law of the regional circuits on matters of procedural law that do not implicate issues of patent law."  *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc*., 583 F.3d 832, 840 (Fed. Cir. 2009) (quotation omitted) (applying regional circuit law as to the "treatment of affirmative defenses"), *aff'd*, 563 U.S. 776 (2011).  "A grant or denial of a motion to strike is not an issue unique to patent law, and [the Federal Circuit] therefore appl[ies] the law of the regional circuit in deciding that question."  *Acumed LLC v. Stryker Corp*., 551 F.3d 1323, 1331 (Fed. Cir. 2008) (quotation omitted).

the affirmative defense will prejudice the plaintiff, though whether prejudice "should be a basis for dismissing or opposing the addition of an otherwise valid affirmative defense will normally depend on when the defense is presented." *Id.* at 98. "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation," while "prejudice may be considered and, in some cases, may be determinative, where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation." *Id.* at 98-99.

### 2.   <u>Defendant's Fifth Affirmative Defense Must Be Stricken</u>

Defendant's fifth affirmative defense is that the Pentachrome Patents "are unenforceable due to terminal disclaimers filed during prosecution of each of these patents" (Dkt. 117 at 10)—in other words, it is based on the same facts and legal theories as Defendant's counterclaim. Accordingly, for the same reasons discussed above, the Court finds that Defendant's fifth affirmative defense is legally insufficient and accordingly must be stricken.

### 3.   <u>Defendant's Sixth Affirmative Defense Is Sufficiently Pled</u>

Defendant's sixth affirmative defense is that the Pentachrome Patents are unenforceable and that Plaintiff's claims based on the Pentachrome Patents should be dismissed with prejudice "due to [Plaintiff's] misconduct and misrepresentations concerning the [Pentachrome] Patents" in this matter and in the *Ricoh* Action. (Dkt. 117 at 10). Plaintiff contends that this affirmative defense is "conclusory and baseless," urging

the Court to take judicial notice of the fact that the *Ricoh* court declined to dismiss claims relating to the Pentachrome Patents on this basis.  (Dkt. 120-1 at 13).

Binding Federal Circuit precedent precludes any finding by this Court that Plaintiff's alleged litigation misconduct renders the Pentachrome Patents unenforceable in all contexts.  In *Aptix Corp. v. Quickturn Design Systems, Inc.*, 269 F.3d 1369 (Fed. Cir. 2001), the Federal Circuit expressly held that "[l]itigation misconduct, while serving as a basis to dismiss the wrongful litigant, does not infect, or even affect, the original grant of the property right." *Id.* at 1375.  The Federal Circuit reiterated that holding in *Regeneron Pharmaceuticals, Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir. 2017), explaining that "courts may not punish a party's post-prosecution misconduct by declaring the patent unenforceable." *Id.* at 1364.  Accordingly, to the extent Defendant is asserting that Plaintiff's alleged misconduct has rendered the Pentachrome Patents unenforceable in all contexts, its sixth affirmative defense fails as a matter of law.

However, Defendant is correct that litigation misconduct may preclude a plaintiff from enforcing its patent rights against the particular defendant in that case.  *See Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 797 (2019).  In particular, where a party engages in misconduct that "has immediate and necessary relation to the equity that [it] seeks in respect of the matter in litigation," that party may render its hands unclean such that the doors of the courthouse are closed to it. *Id.*; *see also Aptix*, 269 F.3d at 1375-76 (explaining that while "[t]he doctrine of unclean

- 12 -

hands does not reach out to extinguish a property right based on misconduct during litigation to enforce the right," it may bar "the offending party" from enforcing the patent in "the case at hand," without "prejudic[ing] the offending party in subsequent cases").[4]

Here, though it is not particularly artfully pled, the Court finds that the sixth affirmative defense should not be stricken.  While Plaintiff vigorously denies having engaged in misconduct, the factual issues regarding whether it knowingly misrepresented to this Court the facts regarding its ownership of the Pentachrome Patents are not ripe for resolution at this stage of the proceedings.  The Court is further not prepared to say, at this relatively early stage of the litigation and without further development of the factual record, that the misconduct alleged is insufficiently serious to warrant a finding of unclean hands.  Moreover, while the Court acknowledges that the court in the *Ricoh* Action declined to dismiss Plaintiff's claims on the basis of misconduct, Defendant in this case does not seek dismissal, but merely to preserve its right to seek such relief in the future if a developed factual record warrants it.

The Court further rejects Plaintiff's argument that the sixth affirmative defense should be stricken because its inclusion prejudices Plaintiff.  As noted above, prejudice is generally not an appropriate basis to strike a timely asserted and otherwise sufficiently pled

---

[4]     Plaintiff argues that Defendant has not asserted an unclean hands defense.  (Dkt. 131 at 12 n.1).  However, while Defendant has not expressly labeled the sixth affirmative defense as an "unclean hands" defense, its substance clearly encompasses such a defense, inasmuch as it asserts that Plaintiff cannot enforce the Pentachrome Patents in this action due to misconduct.  The Court will not strike an otherwise appropriately asserted affirmative defense because it does not bear Plaintiff's preferred label.

affirmative defense. *GEOMC*, 918 F.3d at 98. The Court finds no reason to depart from this rule here. For all these reasons, Plaintiff's request to strike Defendant's sixth affirmative defense is denied.

### 4.   Defendant's Seventh Affirmative Defense Is Sufficiently Pled

Defendant's seventh affirmative defense asserts that Plaintiff's claims based on the Pentachrome Patents are "precluded in whole or in part to the extent that any allegedly infringing products or services were supplied, directly or indirectly, to Xerox by an entity or entities having an express or implied license to the Asserted Patents or by the doctrine of patent exhaustion." (Dkt. 117 at 11). Plaintiff contends that this affirmative defense is "speculative" and lacks supporting factual allegations. (Dkt. 120-1 at 14).

In *GEOMC*, the Second Circuit explained that while "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense," the inquiry is "context-specific," and the Court must bear in mind the difference between a complaint and an affirmative defense, applying a "relaxed application of the plausibility standard" if circumstances warrant. 918 F.3d at 98.

Here, the Court finds it unwarranted to strike Defendant's seventh affirmative defense. At the pleading stage, federal courts generally do not require defendants in patent cases to "plead who received any license, what type of license it was, and if not the executed type, what circumstances led to the license." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 2730724, at *5 (N.D. Cal. June 16, 2014)

(quotation omitted).  Instead, the relevant question is whether the plaintiff has "fair notice" of the substance of the defense.  *Id.*; *see also Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd.*, No. 16-CV-11458-DJC, 2017 WL 3795769, at *8 (D. Mass. Aug. 30, 2017) (declining to dismiss affirmative defense of license and exhaustion on the basis that the defendants had not pleaded sufficient factual support).

Moreover, as the Second Circuit noted in *GEOMC*, it is inappropriate for a court to strictly apply the plausibility standard where the facts needed to plead the defense are not readily known to a defendant.  In this case, Defendant has explained to the Court, as discussed more fully below, the difficulties it has had in uncovering information related to potential licenses, including the necessity of seeking third party discovery from Kodak.  (*See* Dkt. 122-1 at 9-10).  Under these circumstances, the Court finds Defendant's seventh affirmative defense adequately pled and denies Plaintiff's request that it be stricken.

## II.    **Defendant's Motion to Amend**

### A.    **Legal Standard**

"A district court has broad discretion in determining whether to grant leave to amend[.]"  *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  Two provisions of the Federal Rules of Civil Procedure guide the Court's analysis of a motion for leave to amend where the deadline for such motions, as set forth in a scheduling order, has expired.[5]  The

---

[5]    The scheduling order in this case required all motions to amend the pleadings to be made by October 11, 2019.  (Dkt. 94 at 2).  Defendant missed this deadline by just over a month, filing its motion to amend on November 22, 2019.  (Dkt. 122).

first is Rule 15(a)(2), which provides that once the time for leave to amend as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The second is Rule 16(b)(4), which provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As the Second Circuit has stated:

> Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.

*Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (quotations and citations omitted).

"In determining whether a movant has satisfied the 'good cause' standard under Rule 16(b), 'the primary consideration is whether the moving party can demonstrate diligence.'" *Charter Commc'ns, Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 338 F. Supp. 3d 242, 254 (S.D.N.Y. 2018) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). However, diligence is "not . . . the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 244.

## B.   Defendant Has Satisfied the Standard for Granting Leave to Amend

Defendant seeks to amend its Answer to the Amended Complaint to include the following affirmative defense: "[Plaintiff's] claims on the Asserted Patents are precluded in whole or in part to the extent that any allegedly infringing products or services were supplied, directly or indirectly, to [Defendant] by an entity or entities having an express or implied license to the Asserted Patents or by the doctrine of patent exhaustion."  (Dkt. 122-8 at 57).   Plaintiff opposes Defendant's motion, arguing that (1) the proposed amendment is futile, (2) Defendant has not shown good cause for modifying the scheduling order, and (3) Plaintiff will suffer undue prejudice if amendment is permitted.  (Dkt. 133). The Court considers each of these arguments below.

### 1.   The Proposed Amendment Is Not Futile

It is within the Court's discretion to deny leave to amend where the proposed amendments would be futile.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "[T]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile."  *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 370 (W.D.N.Y. 2018) (quotation omitted).   In determining whether a proposed amendment is futile, the Court applies the plausibility standard used to assess the adequacy of pleadings.  *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).

Here, the Court has already concluded that Defendant's license and exhaustion defense as set forth in its Answer to the Pentachrome Complaint is adequately pleaded. The same analysis applies here. While the proposed new affirmative defense does not include detailed factual allegations regarding the potential licenses, considered in context it is sufficient to put Plaintiff on notice of the issues raised. Had the proposed affirmative defense been included in Defendant's Answer to the Amended Complaint, the Court would have denied any request by Plaintiff that it be stricken, for the same reasons it has denied Plaintiff's request to strike as to the license and exhaustion affirmative defense asserted in the Answer to the Pentachrome Complaint.

The parties spend much of their papers arguing about whether certain agreements between Kodak and non-party Fujifilm provide factual support for the proposed license and exhaustion defense, as well as about whether Defendant has presented adequate evidence to support is contention that it is involved in a joint venture with Fujifilm that is relevant to this action. (*See, e.g.*, Dkt. 122-1 at 5-7; Dkt. 133 at 8-10; Dkt. 144 at 7-9). These factual disputes are not ripe for resolution by the Court. Fact discovery in this case is ongoing, and it is undisputed that copies of the Fujifilm agreements at issue were not even obtained by the parties until after Defendant's motion to amend was filed. (*See* Dkt. 133 at 9; Dkt. 144 at 7 n.1). In assessing futility, the Court is obliged to presume that these factual disputes will resolve in favor of Defendant. It would be inappropriate for the Court to go beyond the proposed amended pleading and, on the basis of an underdeveloped

factual record, find that Defendant cannot prevail on its proposed license and exhaustion defense.  The Court finds that Plaintiff has not borne the burden of demonstrating futility.

### 2.  Defendant Has Demonstrated Good Cause

Plaintiff next argues that Defendant cannot demonstrate good cause because it has not acted diligently.  (*See* Dkt. 133 at 13).  The Court disagrees.  It is undisputed that (1) Plaintiff did not produce a copy of its Patent Purchase Agreement with Kodak to Defendant until March 20, 2019, (2) Defendant thereafter sought information from Plaintiff regarding the Fujifilm agreements but Plaintiff was unable to provide such information, and (3) Defendant served Kodak with a subpoena regarding license issues in July 2019, well before the expiration of the deadline for leave to amend.  (*See id.*; Dkt. 122-1 at 9-10).  It is clear that Defendant was actively seeking information to support its license and exhaustion defense prior to expiration of the deadline for amendments to pleadings.  While it would have been better practice for Defendant to seek a modification of the scheduling order once it became apparent that it was not going to be able to obtain that information in a timely fashion, Defendant sought consent from Plaintiff to amend its answer on October 25, 2019, only two weeks after the deadline expired.  (Dkt. 122-7).  The Court does not find it appropriate to penalize Defendant for attempting to uncover facts supporting its affirmative defense before seeking leave to amend.  Indeed, Plaintiff's arguments with respect to the pending motions illustrate the difficult position in which Defendant found itself, inasmuch as Plaintiff argues both that Defendant should have pleaded more facts in support of its

license and exhaustion defense and that Defendant's attempt to obtain such facts before seeking leave to amend illustrates a lack of diligence with respect to the deadline.

Further, the Court finds that no prejudice to Plaintiff will result from permitting amendment.  The delay in this case is minimal—Defendant notified Plaintiff of its proposed amendment two weeks after expiration of the deadline, and sought leave to amend less than a month later.  Moreover, the Court has permitted Defendant's license and exhaustion defense to proceed with respect to the Pentachrome Patents, and so discovery regarding licensing issues will be required in this matter regardless of the resolution of Defendant's motion to amend.

For these reasons, the Court will grant Defendant leave to file an amended answer to the Amended Complaint that asserts a license and exhaustion defense.  However, the Court notes that the proposed amended answer submitted by Defendant in connection with its motion to amend contains a counterclaim of unenforceability as to the Pentachrome Patents, as well as an affirmative defense of unenforceability as to the Pentachrome Patents, based on the break in common ownership with the Terminal Disclaimer Patents.  (Dkt. 122-8 at 57-60).  The Court has, for the reasons set forth above, determined that such counterclaim and affirmative defense are legally insufficient.  Defendant's amended answer should therefore omit this counterclaim and affirmative defense.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court grants in part and denies in part Plaintiff's motion to dismiss Defendant's counterclaim and to strike Defendant's fifth, sixth, and seventh affirmative defenses to the Pentachrome Patents. (Dkt. 120). Specifically, the Court grants Plaintiff's request to dismiss Defendant's counterclaim and to strike Defendant's fifth affirmative defense, but denies Plaintiff's request to strike Defendant's sixth and seventh affirmative defenses.

The Court grants Defendant's motion to amend its Answer to the Amended Complaint. (Dkt. 122). Defendant shall file an amended answer in accordance with this Decision and Order by no later than August 17, 2020.

SO ORDERED.


ELIZABETH A. WOLFORD
United States District Judge


Dated: August 10, 2020
      Rochester, New York