UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MIDWEST ATHLETICS AND SPORTS
ALLIANCE LLC,

                    Plaintiff,                          **DECISION AND ORDER**

                    v.                              6:19-CV-06036 EAW

XEROX CORP.,

                    Defendant.

---

## INTRODUCTION

Plaintiff Midwest Athletics and Sports Alliance LLC ("Plaintiff") alleges that

Defendant Xerox Corp. ("Defendant") has infringed 20 patents related to printer

technology. (*See* Dkt. 40). Special Master Susan E. Farley, Esq. (the "Special Master")

has filed a recommendation (Dkt. 149 (the "Patent Narrowing Recommendation")) that the

Court require Plaintiff to reduce the number of asserted patents from twenty to eight at the

dispositive motion stage and to further reduce the number of asserted patents from eight to

four at the trial stage. Plaintiff objects to the Special Master's Patent Narrowing

Recommendation, arguing both that the Court lacks authority to require it to reduce the

number of asserted patents, as opposed to the number of asserted claims, and that the

narrowing recommended by the Special Master is not necessary to make the case

manageable. (Dkt. 157). For the reasons set forth below, the Court rejects Plaintiff's objections and adopts the Special Master's Patent Narrowing Recommendation.

## BACKGROUND

This patent infringement litigation is unusually large—as the Special Master explains in the Patent Narrowing Recommendation, it involves "20 patents, 321 claims, 41 inventors and over 70 accused products and methods involving document printing technology." (Dkt. 149 at 1). As a result, on May 1, 2019, Magistrate Judge Jonathan W. Feldman—to whom this Court had referred the case for all pretrial matters (*see* Dkt. 79)— appointed the Special Master to aid in case management (*see* Dkt. 106).

Judge Feldman entered an order on June 13, 2019, setting forth the Special Master's duties. (Dkt. 108). Among other things, the Special Master is empowered to issue reports and recommendations to the Court for judicial action. (*Id*. at 2). Where a party objects to any part of the Special Master's recommendation, the Special Master is required to "file with the Court a complete record of all information and documents considered in issuing such . . . recommendation[]." (*Id*. at 3).

On November 4, 2019, Judge Feldman entered a scheduling order based on the Special Master's recommendations, without objection by the parties. (Dkt. 118 (the "Case Narrowing Order")). The Case Narrowing Order establishes a five-phase protocol for conduct of the instant litigation. (*Id*.). In Phase 1, Plaintiff was required to elect to proceed with no more than 60 claims, with no limitation as to the number of patents or claims per

patent, by no later than November 22, 2019. (*Id*. at 2). Defendant was then required to elect to proceed with not more than 90 invalidity positions, with no limitation as to the number of references. (*Id*. at 3).

In Phase 2, Plaintiff was required to elect to proceed with no more than 14 terms to be construed by the Court during claim construction, and Defendant was required to elect to proceed with no more than 60 terms to be construed by the Court during claim construction. (*Id*.). A claim construction hearing was held in this matter on October 27, 2020. (Dkt. 184). The Court issued a claim construction decision on December 28, 2020. (Dkt. 185).

In Phase 3, Plaintiff was required, within 14 days of entry of the Court's claim construction decision, to elect to proceed with no more than a total of 24 claims, with no limitation as to the number of references. (*Id*.). Defendant was required, within 21 days of entry of the Court's claim construction decision, to elect to proceed with no more than 24 invalidity positions, with no limit to the number of references. (*Id*.).

Phase 4 is triggered by the close of all discovery, and requires Plaintiff to elect to proceed with no more than 16 claims. (*Id*. at 4). The Case Narrowing Order notes that the Special Master also recommends that Plaintiff be required to elect to proceed with no more than eight patents during Phase 4, but noted that Plaintiff would not consent to any patent narrowing, and that the Special Master would accordingly be filing a written

recommendation in this regard. (*Id*.). During Phase 4, Defendant is required to elect to proceed with no more than 16 invalidity positions and no more than 40 references. (*Id*.).

Phase 5 is triggered by the Court's issuance of its decision on any dispositive motions, and requires Plaintiff to elect to proceed with no more than eight claims. (*Id*.). The Case Narrowing Order notes that the Special Master also recommends that Plaintiff be required to elect to proceed with no more than four patents during Phase 5, but notes again that Plaintiff would not consent to any patent narrowing, and that the Special Master's written recommendation as to this issue would be forthcoming. (*Id*.). During Phase 5, Defendant is required to elect to proceed with no more than eight invalidity positions and no more than 20 references. (*Id*.).

The Special Master filed the Patent Narrowing Recommendation on February 3, 2020. (Dkt. 149). Consistent with the notes in the Case Narrowing Order, the Special Master recommends that Plaintiff be required to elect to proceed with no more than eight patents during Phase 4 and with no more than four patents during Phase 5. (*Id*. at 19). The Special Master also makes an alternative recommendation that if the Court finds that it lacks the authority to require Plaintiff to narrow the number of patents asserted, it "narrow the maximum number of claims in Phase 4 to eight and the maximum number of claims in Phase 5 to four." (*Id*. at 17). The Special Master further notes that this Court has the ability to implement a procedure known as "sever and stay," whereby it would sever claims based on certain patents and stay proceedings thereon, while proceeding to trial on claims based

on the remaining patents. (*Id.* at 13, 18). However, the Special Master advises against using this method, noting that it would "waste . . . judicial resources" because "after the first trial concludes, the outcomes are on hold and cannot be appealed until everything winds its way through." (*Id.* at 18).

Plaintiff filed its objections to the Patent Narrowing Recommendation on February 13, 2020. (Dkt. 155). The Special Master filed supplemental exhibits to the Patent Narrowing Recommendation on February 24, 2020. (Dkt. 160). Also on February 24, 2020, Defendant filed its response to Plaintiff's objections. (Dkt. 161).

## DISCUSSION

### I.      Standard of Review

The Court reviews the Special Master's conclusions of law and findings of fact *de novo* and her procedural determinations for abuse of discretion. (Dkt. 108 at 3-4); *see also* Fed. R. Civ. P. 53(f); *In re Refco Sec. Litig.*, 280 F.R.D. 102, 104 (S.D.N.Y. 2011) ("The Court reviews the Special Master's factual findings and legal conclusions *de novo* and his ruling [regarding the relevancy of particular documents] under an abuse of discretion standard."). Here, Plaintiff's objections to the Patent Narrowing Recommendation involve both a question of law regarding the Court's authority to order patent narrowing and a challenge to the Special Master's determinations regarding case manageability.

The Court reviews the Special Master's legal conclusion regarding the Court's patent narrowing authority *de novo*. As to the latter issue of case manageability, although

this determination addresses a procedural matter, it is based on conclusions of fact and law.

Because it is unclear that this determination can be entirely classified as "procedural," the

Court has reviewed all aspects of the Patent Narrowing Recommendation *de novo*.

## II.     <u>Authority to Order Patent Narrowing</u>

The threshold issue this Court must resolve in considering Plaintiff's objections is

whether it has the authority to order Plaintiff to reduce the number of patents asserted in

the instant litigation for purposes of case manageability.  The Special Master notes that the

Court has "the inherent power 'to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants'" (Dkt. 149 at 11

(quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))), and that the Federal Circuit has

long approved of district courts exercising such authority in complex patent cases to "limit

the number of claims asserted by the plaintiff" (*id.* (citing *In re Katz Interactive Call

Processing Patent Litig.*, 639 F.3d 1303, 1311-13 (Fed. Cir. 2011))).  The Special Master

identifies a number of cases in which reduction of patents has been required "where the

number of patents asserted is unworkable for trial."  (*Id.* at 12 (collecting cases)).  The

Special Master further explains that any dismissal of patents in this case would be without

prejudice, and that the parties have agreed upon a template for stipulated voluntary

dismissal that would provide Plaintiff with robust procedural protections, including tolling

of the applicable statute of limitations.  (*Id.* at 13, 15-16; Dkt. 160-7).

Plaintiff concedes that the Court has the authority to limit the number of asserted claims in order to streamline the instant matter. (Dkt. 157 at 9). However, it argues that there is no authority for the proposition that the Court can limit the number of patents, and distinguishes the cases cited by the Special Master on the basis that the parties in those cases voluntarily agreed to the court-ordered reduction. (*Id*. at 10-11). Plaintiff further suggests that ordering it to elect among the asserted patents would run afoul of its due process rights. (*Id*. at 13).

The Court finds Plaintiff's contention that its inherent authority does not extend so far as to require Plaintiff to limit the number of patents asserted at the dispositive motion and trial stages of this litigation unpersuasive. As Plaintiff notes, there do not appear to be—at least, the parties and the Special Master have not cited and the Court has not discovered in its own research—any cases expressly discussing a court's authority to impose such a patent narrowing requirement where the plaintiff has objected. However, the Court can discern no principled reason for distinguishing between narrowing of claims and narrowing of patents in the manner suggested by Plaintiff.

It is undisputed that the Court can limit the number of claims Plaintiff can assert at various stages of this litigation. As the Special Master aptly noted in her Patent Narrowing Recommendation, in this multi-patent litigation, the Court could achieve the same end result—limiting Plaintiff to assertion of no more than eight patents at Phase 4 and no more than four patents at Phase 5—by limiting Plaintiff to assertion of eight or four *claims*,

respectively, at those same Phases. Plaintiff has offered no cogent reason why this Court cannot order expressly what it concededly could require collaterally. The Supreme Court has cautioned against "exalt[ing] form over substance" in patent cases, *Parker v. Flook*, 437 U.S. 584, 590 (1978) (rejecting argument that would have caused patentability to depend on the skill of the draftsman), which is what Plaintiff's position would do.

The Federal Circuit's decision in *In re Katz* is consistent with the Court's conclusion, inasmuch as the Federal Circuit expressly assumed that the plaintiff there had "a separate property right in each claim of each asserted patent." 639 F.3d at 1311 n.6. Accordingly, the fact that Plaintiff has a separate property right in each asserted patent does not change the analysis.

Further, the Court disagrees with Plaintiff that the approach recommended by the Special Master violates Plaintiff's due process rights. As the *In re Katz* court explained, a party claiming a due process violation "must demonstrate that the district court's claim selection procedure risked erroneously depriving it of its rights and that the risk outweighed the added costs associated with a substitute procedure." *Id*. at 1311. Here, as Defendant notes in opposition to Plaintiff's objections, the preservation of rights set forth in the stipulated template for voluntary dismissal of non-elected patents means that there "is literally no substantive right, patent or otherwise, that [Plaintiff] would lose under the Special Master's recommendation[.]" (Dkt. 161 at 5). To the contrary, adopting the

procedure recommended by the Special Master puts Plaintiff in a superior position, procedurally, then it would be were the Court to adopt a sever-and-stay protocol.

In sum, neither due process concerns nor any established principles of patent law support the conclusion that, in a complex patent case such as this one, the Court is limited to requiring claim narrowing as opposed to patent narrowing. The Court rejects Plaintiff's argument to the contrary.

## III.    The Court Adopts the Patent Narrowing Recommendation

Having resolved Plaintiff's legal objection to the Patent Narrowing Objection, the Court turns to Plaintiff's contention that "[t]here is no need or justification" for requiring Plaintiff to narrow the number of asserted patents "because this case is already manageable to both the Court and the parties, and will be properly narrowed without such an extreme measure." (Dkt. 157 at 14). The Court does not find Plaintiff's arguments in this regard persuasive, because Plaintiff fails to meaningfully address the Special Master's primary reason for recommending patent narrowing—that given the nature of the patents at issue here, "a 4-patent infringement case in this instance is the outside edge of what a court can and should place before a jury." (Dkt. 149 at 14).

"In determining whether to require parties [to] limit the number of claims asserted, courts look to the number of patents and claims at issue and the feasibility of trying the claims to a jury." *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013). Here, Plaintiff has offered no explanation for

how a lay jury could reasonably be expected to grapple with infringement claims related to eight separate, highly technical patents. Indeed, this Court, in resolving the parties' many claim construction disputes, experienced first-hand the complexity of the technology at issue in this case and the time investment necessary for an individual without a background in the relevant subject matter to understand the issues involved. The Court agrees with the Special Master that four patents represents the maximum that a lay jury could reasonably be expected to understand in a single trial.

Of course, as the Special Master noted in her Patent Narrowing Recommendation, if "the facts in Phases 4 and 5 warrant more patents continuing through the process," Plaintiff is free to seek amendment of the Case Narrowing Order, to allow it to assert additional patents. (Dkt. 149 at 18; *see* Dkt. 118 at 6 (Case Narrowing Order expressly providing that parties may seek to increase the limits set forth therein by showing good cause and lack of undue prejudice)); *see also Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011) (upholding district court's claim narrowing protocol because "the district court's order to limit the claims was not immutable" and "the district court left open the door for the assertion of additional claims on a showing of need").

## CONCLUSION

For the reasons set forth above, the Court rejects Plaintiff's objections (Dkt. 157) and adopts the Special Master's Patent Narrowing Recommendation (Dkt. 149). The Case Narrowing Order (Dkt. 118) is modified to require that Plaintiff reduce the number of

asserted patents from twenty to eight at Phase 4 and further reduce the number of asserted

patents from eight to four at Phase 5.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 25, 2021
        Rochester, New York